IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLENE NOVIC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-17-0177 |
| MIDLAND FUNDING, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Charlene Novic ("Plaintiff" or "Ms. Novic") initially brought this action against Defendants Credit One Bank, N.A. ("Credit One"), Midland Funding, LLC and Midland Credit Management, LLC (collectively, "Midland"), Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC, ("Equifax"), and Experian Information Solutions, Inc. ("Experian")[1] alleging violations of the Federal Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Am. Compl. ECF No. 23.) Currently pending before this Court is Defendant Credit One's Motion to Compel Arbitration and Stay the Litigation. (ECF No. 52.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Defendant's Motion to Compel Arbitration and Stay the Litigation (ECF No. 52) is DENIED.

## BACKGROUND

Ms. Novic opened an account with Credit One in September of 2011. (ECF No. 23 at ¶ 6.) In August of 2013, unbeknownst to Ms. Novic, the mailing address on her account

---

[1] As indicated *infra*, the claims against the Defendants TransUnion, Equifax, and Experian have now been dismissed and Credit One and Midland are the only remaining defendants.

1

was switched from her Maryland address to an address in Oregon. (ECF No. 23 at ¶¶ 16-19; ECF No. 54-1 at 11.) One month later, fraudulent charges began accumulating on Ms. Novic's account. (*Id.*) Ms. Novic, not yet realizing the fraud, continued to make monthly payments only in an amount sufficient to cover her usual spending. (ECF No. 23 at ¶ 25.) On March 22, 2014, Ms. Novic received a late notice from Credit One via email that stated "if you have already made your payment, please ignore this notice." (*Id.* at ¶ 26.) Believing that she had already paid her account, Ms. Novic ignored the notice. (*Id.*) Eight days later, Credit One sold Ms. Novic's account. (*Id.* at ¶ 27). Over the next month, Ms. Novic's account was sold from Credit One to MHC Receivables, LLC ("MHC"), from MHC to Sherman Originator III LLC ("Sherman"), and then from Sherman to Midland. (ECF No. 54-1 at 9.)

In late April of 2014, Midland began contacting Ms. Novic to collect the debt via letter and telephone calls. (ECF No. 23 at ¶¶ 28-29.) Ms. Novic, not yet aware of the fraud or that her account had been sold to Midland, initially thought the calls were a scam. (*Id.* at ¶ 31.) After the calls continued, Ms. Novic demanded proof that she owed the debt. (*Id.*) After speaking with Midland representatives and contacting Credit One, Ms. Novic finally received an account statement showing the fraudulent address and unauthorized charges. (*Id.* at ¶¶ 20, 32.) Ms. Novic immediately reported the fraudulent Oregon address and unauthorized transactions to Midland. (*Id.* at ¶ 32.) When she checked her credit reports, Ms. Novic saw that both Credit One and Midland were reporting the same fraudulent account. (*Id.* at ¶¶ 34, 39.) Ms. Novic then began to dispute the debt with Equifax, Trans Union, and Experian. (*Id.* at ¶¶ 35-39.) When Credit One and Midland continued to report that Ms. Novic owed

money on the fraudulent account, however, the credit bureaus refused to remove the false reporting. (*Id.*)

Despite Ms. Novic's disputes and reports of fraud, in 2016, Midland initiated collection proceedings against Ms. Novic in the District Court of Maryland for Washington County. (ECF No. 54-1 at 1-7.) Midland, in order to show that it was the successor-in-interest to Ms. Novic's account, had documentation and affidavits from Credit One. (*Id.* at 12-14, 16-17.) To show that Credit One originated Ms. Novic's account, Credit One's Vice President of Portfolio Services-Operations, Gary Harwood, noted on the bill from MHC to Sherman that Credit One acknowledged the sale and that the accounts were originated by Credit One and had previously been assigned to MHC. (*Id.* at 12.) Mr. Harwood also provided an affidavit detailing that Ms. Novic's account was "originated by Credit One and owned by MHC immediately prior to the sale to Sherman" and the sale "represent[s] all rights to the accounts and receivables previously owned and serviced by Credit One." (*Id.* at 13-14.) Midland then had a copy of the bills of sale from MHC to Sherman and from Sherman to Midland. (*Id.* at 8-25.) In addition, Credit One's Senior Vice President and Chief Financial Officer provided an affidavit similar to Mr. Harwood's detailing how Credit One assigns accounts and receivables "represent[ing] all rights to the accounts." (*Id.* at 16-17.)

Ms. Novic filed a notice of intention to defend on the grounds that someone had stolen her identity, changed the address on her account, and ran up charges. (ECF No. 54 at 2, ¶ 2; ECF No. 54-1 at 3.) The state district court, after a trial on the merits on October 3, 2016, entered judgment in favor of Ms. Novic. (ECF No. 23 at ¶¶ 46-52.)

On December 27, 2016, Ms. Novic filed the instant action in the Circuit Court for Anne Arundel County. (ECF No. 2.) Defendant Trans Union removed the case to federal court based on federal question jurisdiction. (ECF No. 1.) On June 15, 2017, this Court ordered a Stipulation of Dismissal with Prejudice between Ms. Novic and Defendant Trans Union. (ECF No. 63.) On September 11, 2017, by agreement of the parties, this Court dismissed Defendants Equifax and Experian from this action. (ECF No. 93.)

On March 24, 2017, Credit One filed a Motion to Compel Arbitration and Stay the Litigation. (ECF No. 52.) Initially, Midland also filed a Motion to Compel Arbitration and Stay the Proceedings. (ECF No. 61.) Following a teleconference with the parties, this Court granted Credit One and Midland leave to file Supplemental Memorandum in Support of their Motions to Compel Arbitration regarding the Maryland Court of Appeals' March 24, 2017 decision in *Cain v. Midland Funding, LLC*, 452 Md. 141 (2017). (ECF Nos. 72, 74.) Five days after the teleconference, Midland filed a Consent Motion to Withdraw its Motion to Compel Arbitration and Stay Proceedings, ECF No. 75, which this Court granted. (ECF No. 77.)

**STANDARD OF REVIEW**

Defendant Credit One has filed the pending Motion to Compel Arbitration (ECF No. 52) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. The standard of review on a Motion to Compel Arbitration pursuant to the FAA is "'akin to the burden on summary judgment.'"[2] *Galloway v. Santander Consumer USA, Inc.*, 819 F. 3d 79, 85 (4th Cir.

---

[2] Although the Fourth Circuit has characterized the standard of review on a Motion to Compel Arbitration as "*akin to* the burden on summary judgment," the pending motion will not be converted to or treated as a motion for summary judgment. On the contrary, the remedies available to a defendant moving to compel arbitration are limited to a stay or dismissal of the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,

4

2016) (quoting *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F. 3d 553, 564 (4th Cir. 2015)). Therefore, motions to compel arbitration "shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Rose v. New Day Financial, LLC*, 816 F. Supp. 2d 245, 251-52 (D. Md. 2011).

A party seeking to apply the FAA must demonstrate four elements: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Galloway*, 819 F. 3d at 84 (quoting *Rota–McLarty v. Santander Consumer USA, Inc.*, 700 F. 3d 690, 696 n. 6 (4th Cir. 2012)). Therefore, "although arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.'" *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 501 (4th Cir. 2002) (quoting *Arrants v. Buck*, 130 F. 3d 636, 640 (4th Cir. 1997)). The Supreme Court has directed courts to "apply ordinary state-law principles that govern the formation of contracts" and "federal substantive law of arbitratbility." *Hill v. Peoplesoft USA, Inc.*, 412 F. 3d 540, 543 (4th Cir. 2005); *see also Heller v. TriEnergy, Inc.*, 877 F. Supp. 2d 414, 423-24 (N.D.W.V. 2012) (explaining that the "one important caveat to the reach of the FAA" is that state law governs the formation of the contract (citing *Hill*, 412 F. 3d at 543)).

---

252 F. 3d 707, 709-10 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements [citing 9 U.S.C. § 3] . . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. [citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F. 2d 1161, 1164 (5th Cir. 1992)].")

5

**ANALYSIS**

Ms. Novic does not contest that the Agreement between herself and the Defendant Credit One once contained a valid agreement to arbitrate. Rather, Ms. Novic's argument is two-fold: First, that Credit One ceased to be a party to the arbitration agreement when it assigned all of its right, title and interest to Ms. Novic's account. Therefore, it no longer holds the right to compel arbitration. Second, that even if the arbitration agreement between Ms. Novic and Credit One survived the assignments, the right to arbitrate was waived as the result of the state court litigation. This Court addresses these arguments in turn.[3]

## I. Defendant assigned its right to arbitrate

Ms. Novic first argues that there is no longer a binding and enforceable agreement to arbitrate as a result of Credit One's assignment of its right, title and interest to her account. (ECF No. 79 at 5.) "[A]rbitrability is at bottom a question of contract interpretation; a party cannot be required to arbitrate a dispute if it has not contractually agreed to do so." *Sierra Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 346, 2015 WL 8479195, at *3 (D. Md. Dec. 10, 2015). Therefore, "[w]hile ambiguities in the language of [an] agreement should be resolved in favor of arbitration, *Volt* [*v. Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1980)], [the Court does] not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

---

[3] In Plaintiff's initial Response in Opposition to Defendant's Motion to Compel, Plaintiff also argued that if Defendant retained any right to compel arbitration, that right merged into the state court judgment entered against Midland. (ECF No. 54 at 7, 12.) Because this Court finds that Defendant did not maintain any right to arbitrate, it does not reach this issue.

While the parties dispute what, if any, state law would control the issue of waiver, both parties apply Maryland law to the issue of assignment. (ECF No. 52-1 at 6; ECF No. 54 at 6.) In Maryland, "'a contract cannot be enforced by or against a person who is not a party to it.'" *Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co.*, 437 F. Supp. 2d 485, 489 (D. Md. 2006) (*quoting CraneIce Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 128 A. 280, 281 (1925)). An assignment "transfer[s] all interests in the property from the assignor to the assignee." *Roberts v. Total Health Care, Inc.*, 349 Md. 499, 511, 709 A. 2d 142, 148 (1998); *see also Bouchard v. People's Bank*, 219 Conn. 465, 473, 594 A. 2d 1, 4-5 (1991) ("Succession by an assignee to exclusive ownership of all or part of the assignor's rights respecting the subject matter of the assignment, and a corresponding extinguishment of those rights in the assignor, is precisely the effect of a valid assignment."). The Maryland Court of Appeals recently reiterated this principle, stating that "[a]n assignment is a transfer of property or of some other right from one person (the assignor) to another (the assignee), which confers a complete and present right in the subject matter to the assignee, and privity of estate between the original parties ceases to exist." *Julian v. Buonassissi*, 414 Md. 641, 662, 997 A. 2d 104, 116, n.12 (2010).

The Agreement sets out the rights initially created when Ms. Novic opened an account with Credit One. The Agreement to Arbitrate provision states: "[y]ou and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us . . . be submitted to mandatory, binding arbitration." (ECF No. 52-5 at 5.) The Agreement defines "you" as those authorized to use the card and "we" as "Credit One Bank, N.A., its successors or assigns." (*Id.* at 2.)

7

The subsequent bills of sale, gathered by Midland for its suit against Ms. Novic, then show the extent of the assignments between the assignors, initially the Defendant Credit One, and subsequent assignees. The bill of sale from MHC to Sherman states that MHC "hereby transfers, sells, assigns, conveys, grants and delivers to Sherman Originator III LLC … all of its right, title and interest in and to [Ms. Novic's account]." (ECF No. 54-1 at 12.) On the bill of sale is Credit One's acknowledgement that "[t]he accounts assigned under the terms of th[e] Bill of Sale were originated by Credit One Bank, N.A., and ha[d] previously been assigned to MHC pursuant to a series of self-executing agreements." *Id.*

The Defendant Credit One provided two affidavits that further assisted Midland in the state court case in proving that it was the successor-in-interest to Ms. Novic's account. The Vice President of Portfolio Services-Operations at Credit One provided an affidavit of sale stating that accounts and receivables, including Ms. Novic's, originated by Credit One to MHC and subsequently Sherman "represent all rights to the accounts and receivables previously owed and serviced by Credit One." (ECF No. 54-1 at 13.) Defendant's Senior Vice President and Chief Financial Officer also provided similar information in his affidavit, stating that accounts purchased from MHC "represent all rights to the accounts previously owed and serviced by Credit One." (ECF No. 54-1 at 17.)

Despite the language of the Agreement and bills of sale, Credit One argues that it maintains its right to arbitrate in the Agreement due to the Agreement's Severability and Survival provision. This provision states that the "arbitration provision shall survive . . . any transfer or assignment of your account, or any amounts owed on your account." (ECF No. 52-5 at 6.) Defendant cites a case from the United States District Court from the Northern

District of Georgia where the court held that "an arbitration provision may survive the termination of a contract because it is a 'structural provision' that relates to remedies and dispute resolution, and not an obligation concerning performance." *Goshawk Dedicated Ltd. v. Portsmouth Settlement Co. I, Inc.*, 466 F. Supp. 2d 1293, 1300 (N.D. Ga. 2006). However, Defendant's reliance on *Goshawk Dedicated Ltd.* is misplaced given that the Georgia case dealt with the termination of the contract through novation.[4]

By its language, the Agreement gave "Credit One, its successors *or* assigns" (emphasis added) the right to arbitrate. Therefore, although Credit One initially held the right to arbitrate, when Credit One transferred its rights and interests in the Agreement it transferred that right to the assignee. This Court has previously held with respect to Defendant Midland that as the "assignee of all right, title, and interest" in individuals' accounts, Midland could enforce an arbitration provision contained in agreements between the individuals and Citibank. *Bey v. Midland Credit Mgt., Inc.*, 2016 WL 1226648 (D. Md. Mar. 23, 2016). This *Bey* decision predated the Maryland Court of Appeals' holding in *Cain v. Midland Funding, LLC*, 452 Md. 141 (2017) that the defendant, also Midland, waived its contractual right to arbitrate by filing and pursuing collection actions in state court. In addition, in the *Bey* case, Midland never sought to collect from the class of individuals in state court.[5] *Bey*, 2016 WL 1226648.

---

[4] The other cases Defendant cites can be similarly distinguished. *See Rhodall v. Verizon Wireless of the E., L.P.*, No. 1:10-3195, 2011 WL 4036418, at *3 (D.S.C. Sept. 9, 2011) ("Plaintiff argues that the Agreement was canceled, … [and therefore] no contract exists by which the parties are bound to arbitrate."); *see also Hedley v. Clear Channel Communs.*, No. CV020817741S, 2003 WL 22079531, at *6-8 (Conn. Super. Ct. Aug. 5, 2003) (examining whether an arbitration clause survived in the "post-expiration period" to the agreement).

[5] Following this Court's grant of leave to Defendants Midland and Credit One to file Supplemental Memorandum in Support of their Motions to Compel Arbitration concerning the Maryland Court of Appeals' decision in *Cain*, Midland filed a Consent Motion to Withdraw its Motion to Compel Arbitration and Stay Proceedings, ECF No. 75, which this Court granted. (ECF No. 77.)

As the Defendant Credit One emphasized in its Supplemental Memorandum, "Credit One is the entity that assigned and sold via a third party Ms. Novic's account to Midland. Credit One has no relationship with Midland. . . . Midland then, on its own behalf and without Credit One as a party or beneficiary of the action, pursued the state court litigation." (ECF No. 76 at 1.) In light of this acknowledgement by Credit One, Ms. Novic has aptly noted that "there is no basis in the text to conclude that the surviving arbitration provision lives not only with the assignees but also with the assignor." (ECF No. 79 at 3.) For this Court to hold otherwise could mean that each assignee to Ms. Novic's account, despite having transferred all its rights to a subsequent assignee, still maintain the right to compel the Plaintiff to arbitrate. When Credit One assigned all right, title and interest to Ms. Novic's account, it ceased to be a party to the contract. Therefore, Defendant no longer holds the right to compel Ms. Novic to arbitrate this case.[6] Accordingly, the Defendant Credit One's Motion to Compel Arbitration and Stay the Litigation (ECF No. 52) is DENIED.

**II. Even if Defendant maintained its right to arbitrate, Defendant defaulted that right**

In the alternative, Ms. Novic argues that even if Credit One retained the right to compel arbitration, that right was waived by Midland's state court suit against her. The parties dispute whether the Federal Arbitration Act, which applies the doctrine of default, or Maryland state law, which applies the doctrine of waiver, applies to this issue. That dispute is of no moment, however, in this case. As discussed below, the United States Court of Appeals for the Fourth Circuit has specifically held that utilizing "litigation machinery" may

---

[6] In concluding its Memorandum in support of its Motion to Compel (ECF No. 52-1), Defendant cites a North Carolina case, *Rice v. Credit One Financial*, No. 5:15-CV-130-BO, 2015 WL 4528933 (E.D.N.C. July 27, 2015), where it successfully moved to compel arbitration. In that case, however, Credit One had neither assigned nor sold the Plaintiff's account. *Id.*

preclude application of binding arbitration. *Maxum Founds. Inc. v. Salus Corp.*, 779 F. 2d 974, 981 (4th Cir. 1985). Furthermore, it is abundantly clear that Maryland state law precludes binding arbitration in light of the recent Maryland Court of Appeals opinion in *Cain v. Midland Funding, LLC*, 452 Md. 141 (2017). The Defendant Credit One has defaulted its right to arbitrate under both federal *and* state law for the reasons that follow.

The Federal Arbitration Act "applies to arbitration clauses in contracts 'evidencing a transaction involving commerce.'" *See Iraq Middle Market Development Foundation v. Harmoosh*, 848 F. 3d 235, 239 (4th Cir. 2017) (quoting 9 U.S.C. § 2). The Fourth Circuit has noted that "the reach of the statute is broad" and "exercise[s] the full scope of Congress's commerce-clause power." *Rota-McLarty*, 700 F. 3d at 697. "Commerce" is defined as "commerce among the several states," 9 U.S.C. § 1, and the effect on interstate commerce does not need to be identified specifically, "so long as "in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.'" *Rota-McLarty*, 700 F. 3d at 698 (quoting *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56–57 (2003)); *see also Alafabco*, 539 U.S. at 56-57 ("Nor is application of the FAA defeated because the individual debt-restructuring transactions, taken alone, did not have a 'substantial effect on interstate commerce.' … Only that general practice need bear on interstate commerce in a substantial way.").

Defendant claims the Agreement evidences a transaction involving commerce because the Agreement is between Credit One, a national banking association with its headquarters in Nevada, and Ms. Novic, a resident of Maryland. In addition, the arbitration agreement provides that "[t]his arbitration provision is made pursuant to a transaction involving interstate commerce." (ECF No. 52-5 at 5.) Ms. Novic argues that the issue of

11

waiver addresses whether an agreement to arbitrate still exists. The Fourth Circuit, however, has made it clear that the FAA governs whether a party has waived the right to arbitrate. *See Harmoosh*, 848 F. 3d at 239 (deciding first, under Maryland law, whether an arbitration clause exception applied before deciding whether the defendant waived his right to arbitrate under the FAA); *see also Rota-McLarty*, 700 F. 3d (finding that the transaction including the arbitration agreement related to interstate commerce and therefore the district court erred by not applying the FAA). Because the evidence shows that the transaction between Defendant and Ms. Novic "evidenc[es] a transaction involving commerce," the FAA and federal law applies to the issue of whether Credit One waived his right to arbitrate.

Under the FAA, "a party loses its right to a stay of court proceedings in order to arbitrate if it is 'in default in proceeding with such arbitration.'" *Forrester v. Penn Lyon Homes, Inc.*, 553 F. 3d 340, 342 (4th Cir. 2009) (quoting 9 U.S.C. § 3). A party is in default when it "so substantially utilize[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds. Inc. v. Salus Corp.*, 779 F. 2d 974, 981 (4th Cir. 1985). As the Fourth Circuit has explained, "delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Microstrategy, Inc. v. Lauricia*, 268 F. 3d 244, 249 (4th Cir. 2001).

In this case, Credit One has lost its right to a stay of these proceedings in order to arbitrate as a result of its assignment of Ms. Novic's account, which set forth a chain of events resulting in the "litigation machinery" of Midland to be applied against her. In proceeding with a trial in the District Court of Maryland for Washington County, Midland not only showed that it was the successor-in-interest to Ms. Novic's account, it also barred

12

its subsequent demand for arbitration in this case.[7] This analysis also applies to the Defendant Credit One which set forth the chain of events resulting in that litigation. That chain of events ultimately resulted in Midland purchasing the account on April 22, 2014. Ms. Novic was then brought into state court by Midland, the party who held the right to arbitrate, over whether she defaulted on her account or whether an imposter fraudulently racked up charges. Indeed, the Defendant Credit One assisted Midland in this state action by providing documentation that Midland was the successor-in-interest to Ms. Novic's account. Mr. Harwood's affidavit, detailing that Ms. Novic's account was "originated by Credit One and owned by MHC immediately prior to the sale to Sherman" and the sale "represent[s] all rights to the accounts and receivables previously owned and serviced by Credit One" was created a month after Midland took over Plaintiff's account. (ECF No. 54-1 at 13-14.)

Given that Midland sought to recover the underlying debt on the contract now in dispute, Midland's litigation was based on the same issues as Plaintiff's current complaint. As this Court noted in *Barbagallo v. Niagara Credit Solutions, Inc.*, 2012 WL 6478956, at *3 (D. Md. Dec. 4, 2012), the defendant's state court suit against plaintiff "support[ed] a finding of prejudice, because it was based on essentially the same legal and factual issues currently disputed: it sought to recover the underlying debt on the contract."

Although not binding, the recent Maryland Court of Appeals case *Cain v. Midland Funding, LLC,* 452 Md. 141, 156 A. 3d 807 (2017) also reflects this public policy. In *Cain*, the plaintiff alleged that the defendant Midland had used unlawful debt collection practices in a previous claims collection action against Cain. *Id.* Midland sought to compel Cain to arbitrate

---

[7] On July 3, 2017, Midland filed a Consent Motion to Withdraw its Motion to Compel Arbitration and Stay Proceedings, ECF No. 75, which this Court granted. (ECF No. 77.)

13

the claim based on an agreement. *Id.* In response, Cain argued that Midland had waived its right to arbitrate by initiating the state court collection action. *Id.* The Court of Appeals agreed, holding that Midland waived its right to arbitrate Cain's class action claim when it chose to litigate the collection action. *Id.*

In this case, the actions of the Defendant Credit One in setting forth a chain of assignments resulting in litigation "'defeat[s] one of the reasons behind the federal policy favoring arbitration.'" *Forrester v. Penn Lyon Homes, Inc.*, 553 F. 3d 340, 342 (4th Cir. 2009) (quoting *ComTech Assocs. V. Computer Assocs. Int'l Inc.*, 938 F. 2d 1574, 1577 (2d Cir. 1991)). Therefore, even if this Court assumes Credit One maintained its right to arbitrate, it defaulted that right as a matter of federal law. Accordingly, the Defendant Credit One's Motion to Compel Arbitration and Stay the Litigation (ECF No. 52) is DENIED.

## CONCLUSION

For the reasons stated above, Defendant Credit One Bank's Motion to Compel Arbitration and Stay the Litigation (ECF No. 52) is DENIED.

A separate Order follows.


Dated: September 21, 2017                    /s/

                                                                    Richard D. Bennett

                                                                     United States District Judge